UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AUREL SMITH,

                                    Plaintiff,
                                                        9:11-CV-0241
v.                                                      (TJM/TWD)

M. WILDERMUTH, et al.,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

AUREL SMITH, 02-A-6279
Plaintiff *pro se*
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ERIC T. SCHNEIDERMAN                        ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Aurel Smith alleges that Defendants violated his right to practice his religion, subjected

him to excessive force, and failed to protect him from his cell mate. (Dkt. No. 5.) Currently

pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 32.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL SUMMARY

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

At all times relevant to this action, Plaintiff was prisoner in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 5 at 2.) Plaintiff's claims arise from events that occurred at Coxsackie and Upstate Correctional Facilities. *Id*. at 1.

Plaintiff was incarcerated at Coxsackie Correctional Facility from January 2009 to July 2010. *Id*. at 6. Plaintiff alleges that throughout that period there was a "maintained environment" that permitted "staff abuse and misconduct, especially guard brutality and falsification of incident reports so as to cover-up/justify such instances of misconduct . . . ." *Id*. Defendant Martuscello was Superintendent of Coxsackie Correctional Facility from September 2009 to the time that Plaintiff filed the operative complaint. *Id*. Before that time he was the facility's Deputy Superintendent of Security. *Id*. Plaintiff alleges that, in that role, he was directly responsible for the supervision of officers' use of force. (Dkt. No. 5 at 6.) Plaintiff alleges that from the time that Defendant Martuscello became Superintendent until April 20, 2010, there was a beating of an inmate by a correctional officer every month. *Id*.

At 3:30 p.m. on April 20, 2010, Plaintiff was in his cell. *Id*. at 6-7. Plaintiff was performing his salaah, a formal Muslim prayer, with his back to the cell gate. *Id*. at 7. As

Plaintiff was engaged in this prayer, Defendant Correctional Officer Wildermuth approached Plaintiff's cell and ordered Plaintiff to move a coat that was hanging on Plaintiff's bed post. *Id*. Plaintiff reached over and moved the coat while still engaged in the salaah. *Id.* He then continued praying. (Dkt. No. 5 at 7.) Defendant Wildermuth shouted "Hey, I'm talking to you!" at Plaintiff. *Id*. Plaintiff raised his right hand to shoulder level to indicate that Defendant Wildermuth should wait. *Id*. Defendant Wildermuth became irate, began yelling at Plaintiff, banged on Plaintiff's cell gate with his baton, and reached his baton into the cell and knocked some of Plaintiff's personal items from his locker onto the floor. *Id.* Plaintiff continued praying. *Id*. As a result, Defendant Wildermuth informed Plaintiff that he would be confined to his cell for the day. *Id*. at 8.

When Plaintiff finished praying, "he sought to speak to . . . Wildermuth in order to explain the matter so as to mitigate Wildermuth's anger and to avoid a future repetition of that event." (Dkt. No. 5 at 8.) Defendant Wildermuth, irate, told Plaintiff that he did not care whether Plaintiff was praying and that Plaintiff had better acknowledge him. *Id*

A few hours later, Defendant Wildermuth returned to Plaintiff's cell. *Id*. Defendant Wildermuth "began/rehashed a confrontation," which became heated and ended with Defendant Wildermuth storming away. *Id*.

A few hours later, Defendants Morris and Ensel came to Plaintiff's cell and asked if he was ready to move. *Id*. Plaintiff told them that he was not because he was unaware that he was scheduled for a move. *Id*. at 8-9. He asked if he was being set up in retaliation for his dispute with Defendant Wildermuth. (Dkt. No. 5 at 9.) Defendants Morris and Ensel told Plaintiff to do as he was told and pack his belongings. *Id*. Plaintiff was fearful for his safety, but packed his

belongings. *Id*.

When Plaintiff was done packing, Defendant Wildermuth used the lock-box control panel to open Plaintiff's door, as Defendants Morris and Ensel stood in front of the door. *Id*. Before opening the door, Defendant Wildermuth told Plaintiff "We'll see how tough you are now." *Id*.

Defendants Wildermuth, Morris, and Ensel escorted Plaintiff as he moved six bags of belongings to his new cell. *Id*. at 9-10. There were several correctional officers positioned in the area between the cells, including Defendants Hale and Slater. (Dkt. No. 5 at 10.) Some of the officers made snide remarks about Plaintiff threatening an officer. *Id*.

As Plaintiff carried his last bag of belongings down the staircase to his new cell, Defendant Wildermuth blocked his path. *Id*. Defendants Wildermuth, Hale, Slater, Ensel, Morris, and Noethe and other officers then attacked Plaintiff, beating, kicking, choking him and hitting him with their batons for approximately fifteen minutes. *Id*. at 10-16. Defendants Saez, Chewers, and Bailey stood by throughout this attack. *Id*. at 12. Plaintiff was injured so badly that he was transported to an outside hospital, where he was diagnosed with a concussion, swelling in the back of his head, blood in both ear canals, and abrasions and bruises to his neck, back, and face. *Id*. at 15.

Thereafter, Defendants filed false reports to cover up the use of excessive force. (Dkt. No. 5 at 16.) Plaintiff was found guilty of several institutional rules violations as a result of the false reports. *Id*. at 20. Plaintiff was sentenced to twenty-four months in the SHU, lost twenty-four months of privileges, and lost twenty-four months of good time credits. *Id*. at 20-21. Plaintiff appealed and the sentence was reduced to twelve months in the SHU, loss of privileges, and loss of good time credits. *Id*. at 21. Plaintiff filed an Article 78 proceeding in New York

state court challenging the sentence.  *Id*.  That proceeding is pending.  *Id*.

Plaintiff filed a grievance on April 27, 2010, regarding staff abuse and excessive force. (Dkt. No. 5 at 16.)  Defendant Martuscello denied the grievance.  *Id*.  The denial stated that "[s]taff denies all allegations of assaulting the grievant . . . The grievant was interviewed by a Lieutenant and offered no additional evidence to support his complaints."  (Dkt. No. 5-1 at 15.)

On May 12, 2010, Plaintiff sent Defendant Martuscello a letter requesting that Defendant Martuscello file a criminal complaint on Plaintiff's behalf against the officers who used excessive force.  (Dkt. No. 5 at 17.)  No criminal charges were filed.  *Id*. at 18.  Defendant Martuscello did not contact the Inspector General's office.  *Id*.  However, the Inspector General investigated the matter at Plaintiff's request.  *Id*.  The Inspector General did not,  however, interview other inmates who witnessed the attack.  *Id*.

Plaintiff filed another grievance "against the administrative deliberate indifference and negligence by . . . officials, including Def. Martuscello, regarding the widespread and pervasive conditions of abuse" at Coxsackie.  *Id*. at 19.  Defendant Martuscello did not file a timely response to the grievance.  (Dkt. No. 5 at 19.)  Plaintiff then appealed Defendant Martuscello's failure to respond.  *Id*.  That grievance was denied.  *Id*.

Plaintiff filed a grievance against Defendant Martuscello regarding the failure to file criminal charges.  *Id*.  This grievance was denied at all levels of review.  *Id*. at 20.

Plaintiff was transferred to Upstate Correctional Facility on July 16, 2010, to serve his SHU sentence.  *Id*. at 21.  In September 2010, Plaintiff was moved into a cell with inmate Lester Scarbrough.  (Dkt. No. 5 at 21.)  Inmate Scarbrough suffered from psychiatric disorders, had a history of assaults on staff and fights with other inmates, outweighed Plaintiff by twenty or

twenty-five pounds, and was at least three inches taller than Plaintiff.  *Id*. at 21-22.  After about

two weeks, during which time Inmate Scarbrough behaved extremely erratically and told Plaintiff

at length about his mental problems and desire to be single-celled, Plaintiff asked to be moved to

any available cell.  *Id*. at 22-23.  Plaintiff was not moved and Inmate Scarbrough began to accuse

him of being a spy.  *Id*. at 23.  When, despite the availability of cells, Plaintiff had not been

moved by October 4, 2010, he began writing complaints stating that he was afraid for his safety.

*Id*.

     Plaintiff's first written complaint was to Defendant Rock.  *Id*. at 23.  Plaintiff did not

receive a reply, so he submitted another complaint to Defendant Rock on October 7, 2010.  (Dkt.

No. 5 at 23.)  On that same day he submitted a complaint to Defendant Evans of the Office of

Mental Health.  *Id*. at 23-24.  Plaintiff did not receive a reply from either Defendant Rock or

Defendant Evans, so he submitted another complaint to Defendant Rock on October 11, 2010.

*Id*. at 24.  Plaintiff believes that Defendant Rock failed to respond to his letters in retaliation for a

lawsuit that Plaintiff filed against him regarding incidents at Great Meadow Correctional Facility.

*Id*.

     On October 12, 2010, inmate Scarbrough attacked Plaintiff.  (Dkt. No. 5 at 24.)  Plaintiff

fought back.  *Id*. at 25.  Plaintiff did not receive medical attention for the injuries he sustained.

*Id.* at 25-26.

     Plaintiff and Scarbrough received misbehavior reports and were moved to separate cells.

(Dkt. No. 5 at 25.)  Inmate Scarbrough stole some of Plaintiff's belongings in the process of

changing cells.  *Id*. at 26.  Plaintiff challenged his misbehavior report at the disciplinary hearing,

on appeal, and through an Article 78 proceeding.  *Id*. at 25.  That proceeding is still pending.  *Id*.

On October 12, 2010, Plaintiff wrote to Defendant Rock requesting medical attention and the filing of criminal charges against Inmate Scarbrough. *Id*. at 26. Plaintiff did not receive medical attention and criminal charges were not filed. *Id*.

On October 12, 2010, Plaintiff wrote to Defendant Rock regarding Inmate Scarbrough's theft of Plaintiff's property. (Dkt. No. 5 at 26.)

On October 14, 2010, Plaintiff filed a grievance against Defendants Rock and Evans regarding their failure to respond to his requests to be protected from Inmate Scarbrough. *Id*. He did not receive a response. *Id*. at 27. Plaintiff resubmitted this grievance on November 23, 2010. *Id*. at 28. Thereafter, Plaintiff filed a series of grievances and complaints with various individuals and agencies without receiving any results. *Id*. at 28-32.

Plaintiff filed this action on March 4, 2011. (Dkt. No. 1.) The operative complaint is the amended complaint (Dkt. No. 5), which was filed on the same day as the original complaint. On August 3, 2011, the Court issued its initial review of the amended complaint. (Dkt. No. 9.) Upon initial review, the Court dismissed Plaintiff's First Amendment claim that he was denied access to the inmate grievance program and Plaintiff's conspiracy claims against Defendants Rock and White (who was not discussed in the preceding statement of facts because he is no longer a defendant) with prejudice. *Id*. at 11. The Court dismissed Plaintiff's Fourteenth Amendment equal protection claims against Defendants Martuscello and Rock without prejudice.[1] *Id*. at 12. The Court allowed Plaintiff's other claims to proceed. *Id*. at 8.

Defendants now move to dismiss (1) Plaintiff's state law claims; (2) the First Amendment

---

[1] Plaintiff has not amended the equal protection claim in response to the Court's initial review. In his opposition to the motion to dismiss, Plaintiff states that he is withdrawing the claim. (Dkt. No. 35 at 5-6.)

religion claim against Defendant Wildermuth; and (3) all claims against Defendants Martuscello, Rock, and Evans. (Dkt. No. 32.) Defendants do not move to dismiss the Eighth Amendment excessive force claims against Wildermuth, Ensel, Hale, Slater, Morris, and Noethe or the Eighth Amendment failure to intervene claims against Defendants Bailey, Saez, and Chewens. Plaintiff has opposed the motion. (Dkt. Nos. 35 and 37.)

## II.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.

## III.   ANALYSIS

### A.   State Law Claims

The operative complaint asserts claims under New York state law for assault and battery,

negligence, defamation, and violations of New York's civil rights law. (Dkt. No. 5 at 34-37, 40-

43, 44-45, 46-47, 51-52, 53-54.) Defendants move to dismiss these claims, arguing that they are

barred by New York Correction Law § 24. (Dkt. No. 32-1 at 2.[2]) Defendants are correct.

Section 24 provides as follows:

> 1. No civil action shall be brought in any court of the state, except by
> the attorney general on behalf of the state, against any officer or
> employee of the department, in his personal capacity, for damages
> arising out of any act done or the failure to perform any act within the
> scope of the employment and in the discharge of the duties by such
> officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to
> perform any act within the scope of the employment and in the duties
> of any officer or employee of the department shall be brought and
> maintained in the court of claims as a claim against the state.

This statute precludes inmates from suing DOCCS employees in their personal capacity

in New York state courts. *See Arteaga v. State*, 527 N.E.2d 1194, 1199 (1988). The bar also

---

[2]     References to page numbers in citations to Defendants' memorandum of law refer
to the page numbers in the original document rather than the page numbers assigned by the
Court's electronic filing system.

applies to state law claims asserted in federal court because "[i]n applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id*. at 15.

In 2009, the United States Supreme Court held that Correction Law § 24 is unconstitutional to the extent it precludes inmates from pursuing § 1983 claims. *Haywood v. Drown*, 556 U.S. 729 (2009). However, the courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear state law claims against DOCCS employees and have continued to dismiss those claims under Correction Law § 24. *See O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH), 2012 WL 987726, at *21, 2012 U.S. Dist. LEXIS 39232, at *60 (N.D.N.Y. Feb. 28, 2012); *Joy v. New York*, No. 5:09-CV-841 (FJS/ATB), 2010 WL 3909694, at *4-5, 2010 U.S. Dist. LEXIS 104641, at *15-16 (N.D.N.Y. Sept. 30, 2010); *Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 WL 4905240, at *16, 2010 U.S. Dist. LEXIS 124737, at *47-48 (N.D.N.Y. Sept. 29, 2010); *Crump v. Ekpe*, No. 9:07-CV-1331, 2010 WL 502762, at *18, 2010 U.S. Dist. LEXIS 10799, at *61 (N.D.N.Y. Feb. 8, 2010).[3] For the reasons set forth in those decisions, I recommend that the Court dismiss Plaintiff's state law claims in this case without leave to amend.

---

[3]     The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

## B.    Religion Claim

Defendants move to dismiss Plaintiff's claims that Defendant Wildermuth violated his right to exercise his religion.  (Dkt. No. 32-1 at 6-7.)  Defendants cite no law in support of this argument.

Prisoners retain some measure of the constitutional right to the free exercise of religion guaranteed by the First Amendment.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).  However, due to the unique concerns of the prison setting, prisoners' free exercise rights must be balanced against the interests of prison officials engaged in the complex duties of administering the penal system.  *Id*.  Thus, a prison regulation or individualized decision to deny a prisoner the ability to engage in a religious exercise "is judged under a reasonableness test less restrictive than that ordinarily applied [to burdens on fundamental rights]: a regulation that burdens a [prisoner's] protected right passes constitutional muster if it is reasonably related to legitimate penological interests."  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) (punctuation omitted).

To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens[4] his sincerely held religious beliefs."  *Salahuddin*, 467

_____

[4]        Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test.  "The *Ford* court noted that the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims. Nevertheless, the *Ford* court held that since the plaintiff had not challenged the application of the substantial burden requirement, the court would proceed as if the requirement applied.  Likewise, the *Salahuddin* court noted that '[r]esolution of this appeal does not require us to address Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement,' because defendants 'never proceed to argue that we should find any particular burdened religious practice to be peripheral or tangential to [plaintiff's] religion.' The court then proceeded as if the substantial burden requirement applied."

F.3d at 274-75 (citing *Ford*, 352 F.3d at 591).  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  *Ford*, 352 F.3d at 590.  Here, Defendants do not dispute that Plaintiff sincerely holds Muslim religious beliefs.

Defendants argue, without citation to law, that Plaintiff was not punished for practicing his religion.  Rather, they argue, Plaintiff was punished[5] for "not properly acknowledging Officer Wildermuth, [which] had nothing to do with the plaintiff practicing his religion."  (Dkt. No. 32-1 at 6.)  Although Defendants do not discuss the applicable legal standard, I construe this as an argument that Plaintiff's religious beliefs were not substantially burdened.

A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Jolly v. Coughlin*, 76 F.3d 468, 476-77 (2d Cir. 1996) (punctuation omitted) (holding that Rastafarian prisoner's sincerely held religious belief that he was prohibited from submitting to a test for latent tuberculosis was "substantially burdened" where he was forced to choose between "submitting to the test or adhering to [his] beliefs and enduring medical keeplock.").  Here, the complaint asserts that Muslims may take "small actions" during salaah, so long as the prayer is not "curtailed or left off from."  (Dkt. No. 5 at 7.)  This, Plaintiff explains, is why he was able to move the coat as Defendant Wildermuth requested but was not able to stop to speak to him.  *Id.*

_____

*Pugh v. Goord*, 571 F. Supp. 2d 477, 497 n.10 (S.D.N.Y. 2008)(citations and some punctuation omitted).

[5]     Defendants state that Plaintiff was punished by being placed on cell restriction and perhaps by being moved to a different cell.  (Dkt. No. 32-1 at 6.)  Defendants do not address Plaintiff's allegation that he was physically attacked as a result of the confrontation with Defendant Wildermuth.

Taking the allegations of the complaint as true, Defendant Wildermuth punished Plaintiff for not immediately speaking to him by yelling at him, banging his baton on Plaintiff's cell gate, confining Plaintiff to his cell for the rest of the day, and leading an attack on him. Read in the light most favorable to Plaintiff, these facts plausibly suggest that Defendant Wildermuth's actions put substantial pressure on Plaintiff to modify his behavior and to violate his beliefs. Therefore, I find that the operative complaint alleges facts plausibly suggesting that Plaintiff's sincere religious beliefs were substantially burdened.

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened,"[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted). Defendants assert that Plaintiff was punished for "not properly acknowledging Officer Wildermuth . . . ." (Dkt. No. 32-1 at 6.) I construe this as an argument that Defendant Wildermuth's legitimate penological interest for yelling at Plaintiff, banging his baton on Plaintiff's cell gate, restricting him to his cell for the rest of the day, and leading an attack on him was that Plaintiff did not "properly acknowledge" him. Defendants have not articulated any reason why Plaintiff's failure to "properly acknowledge" Defendant Wildermuth justified the impinging conduct that allegedly followed. Accordingly, I find that Plaintiff has alleged facts plausibly suggesting that Defendant Wildermuth violated his First Amendment right to practice his religion. Therefore, I recommend that the Court deny Defendants' motion to dismiss this claim.

Even if the complaint did not state a First Amendment religion claim, it would state a

claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA

provides that "[n]o government shall impose a substantial burden on the religious exercise of a

person residing in or confined to an institution[6] . . . unless the government demonstrates that

imposition of the burden on that person (1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental

interest." 42 U.S.C. § 2000cc-1(a). Here, Defendants have not articulated any compelling

governmental interest underlying Defendant Wildermuth's conduct. They have not argued that

allegedly yelling at Plaintiff, banging his baton on Plaintiff's cell gate, restricting him to his cell

for the rest of the day, and leading an attack on him were the least restrictive means of furthering

that unarticulated interest. Therefore, I recommend that Plaintiff's RLUIPA claim survive

Defendants' motion to dismiss.

### C. Claims Against Defendant Martuscello

The operative complaint makes a series of allegations regarding Defendant Martuscello.

(Dkt. No. 5.) Plaintiff alleges that Defendant Martuscello became the superintendent of

Coxsackie Correctional Facility in September 2009 after serving as the facility's Deputy

Superintendent of Security. (Dkt. No. 5 at 6.) Plaintiff alleges that from the time that Defendant

Martuscello became superintendent of Coxsackie until April 2010, there was a beating of an

inmate by a guard every month. (Dkt. No. 5 at 6.) Plaintiff alleges that Defendant Martuscello

denied his grievance regarding staff abuse and excessive force (Dkt. No. 5 at 16), failed to file

---

[6]      An "institution" is any facility or institution that is "owned, operated, or managed
by, or provides services on behalf of any State" and is, *inter alia*, "for persons who are mentally
ill, disabled, or retarded, or chronically ill or handicapped" or "a jail, prison, or other correctional
facility." 42 U.S.C. § 1997(1) (2010).

criminal charges against the officers who allegedly attacked Plaintiff (Dkt. No. 5 at 17-18),

failed to contact the Inspector General's office (Dkt. No. 5 at 18), and failed to respond to an

additional grievance (Dkt. No. 5 at 19). Defendants move to dismiss all claims against

Defendant Martuscello with prejudice. (Dkt. No. 32-1 at 1.)

### 1. Permitting Abusive Conditions to Exist

Defendants move to dismiss Plaintiff's claim that Defendant Martuscello violated the

Eighth Amendment by permitting abusive conditions to exist at Coxsackie. (Dkt. No. 32-1 at 5.)

Defendants argue that the operative complaint does not sufficiently allege that Defendant

Martuscello was personally involved in any constitutional violation. *Id*. Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere

linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of

respondeat superior) is insufficient to show his or her personal involvement in that unlawful

conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210

(2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely

because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Rather, supervisory personnel may be considered personally involved if they (1) directly

participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Here, the complaint does not allege facts plausibly suggesting that Defendant Martuscello was personally involved in the allegedly abusive conditions. The operative complaint alleges merely that Defendant Martuscello, by virtue of his positions as Deputy Superintendent of Security and Superintendent, was responsible for the conditions. This type of respondeat superior liability is not available in actions under 42 U.S.C. § 1983. Therefore, I recommend that the Court dismiss Plaintiff's claim that Defendant Martuscello violated the Eighth Amendment by permitting abusive conditions to exist at Coxsackie Correctional Facility.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that

---

[7]     In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

"better pleading will not cure it." *Id*. (citation omitted). Given the special solicitude that must be granted to *pro se* civil rights litigants, I find that there is a possibility, however slight, that Plaintiff could amend this cause of action to state a claim. Therefore, I recommend that the Court grant Plaintiff leave to amend this claim against Defendant Martuscello.

### 2. Denial of Grievance

The operative complaint alleges that Defendant Martuscello denied Plaintiff's grievance regarding the alleged use of excessive force. (Dkt. No. 5 at 16.) Defendants have not addressed this claim. For the reasons discussed below, I recommend that the Court *sua sponte* dismiss this claim pursuant to 28 U.S.C. § 1915(e) without leave to amend.

The second *Colon* category - that a supervisor is personally involved if he or she failed to remedy a violation after learning of it through a report or appeal - applies only to situations where an alleged violation is ongoing, not to situations involving a one-time violation. *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("It has been held that an appropriate guiding principle for determining personal responsibility is where a grievance alleges an ongoing constitutional violation, the supervisory official who reviews the grievance is personally involved if he is confronted with a situation that he can remedy directly. If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation.") (internal quotation marks and citations omitted); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is

ongoing and the defendant has an opportunity to stop the violation after being informed of it. Similarly, liability may attach when a supervisor fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is assaulted again by that same staff member."). Here, Defendant Martuscello denied Plaintiff's grievance about a one-time event. Accordingly, Plaintiff has not and cannot plead facts plausibly suggesting that the denial constitutes personal involvement in the underlying incident. Therefore, I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

### 3. Failure to File Criminal Charges

Plaintiff alleges that Defendant Martuscello violated his constitutional rights by refusing to file criminal charges against the officers who allegedly attacked Plaintiff. (Dkt. No. 5 at 17.) Defendants argue that this claim should be dismissed. (Dkt. No. 32-1 at 3.) Defendants are correct.

"[I]t is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual." *Price v. Hasly*, No. 04-CV-0090S, 2004 U.S. Dist. LEXIS 29764, at *4, 2004 WL 1305744, at *2 (W.D.N.Y. June 8, 2004) (citing *Leeke v. Timmerman*, 454 U.S. 83 (1981); *Linda R.S. v. Richard D*., 410 U.S. 614 (1973); and *Ostrowski v. Mehltretter*, 20 F.App'x. 87 (2d Cir.2001)) (*sua sponte* dismissing, without leave to amend, prisoner's claim that jail's grievance officer and chief administrator violated his constitutional rights by failing to file criminal charges against inmate who attacked him).[8] Therefore, I

---

[8]        Despite citing this unpublished case in support of their argument, Defendants did not provide Plaintiff with a copy. The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

recommend that the Court dismiss this claim without leave to amend.

### 4. Failure to Contact the Inspector General's Office

Plaintiff alleges that Defendant Martuscello violated his rights by failing to contact the Inspector General's office regarding the alleged use of force. (Dkt. No. 5 at 18.) Defendants have not addressed this claim. I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

"There is ... no constitutional right to an investigation by government officials" ... "and 'no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved.'" *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y.2004) (quoting *Stone v. Dept. of Investigation*, 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202 (S.D.N.Y. Feb. 4, 1992) and *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir.1985)) (granting defendant's motion for summary judgment dismissing prisoner's claim against inspector general for failure investigate alleged assault). Thus, Defendant Martuscello's alleged failure to contact the Inspector General's office did not violate Plaintiff's constitutional rights. Moreover, even if it did, Plaintiff has not alleged that the alleged failure resulted in any harm to him because he admits that the Inspector General did, in fact, conduct an investigation. (Dkt. No. 5 at 18.) Therefore, I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

### 5. Failure to Respond to Grievance

Plaintiff alleges that Defendant Martuscello failed to respond to his grievances regarding the alleged use of excessive force. (Dkt. No. 5 at 19.) Defendants have not addressed this claim. For the reasons discussed below, I recommend that the Court dismiss this claim without leave to

amend.

A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). Here, Plaintiff alleges that Defendant Martuscello failed to respond to his grievances. This allegation is insufficient to establish Defendant Martuscello's personal involvement. Therefore, I recommend that the Court *sua sponte* dismiss this claim without leave to amend.

### D. Claims Against Defendant Rock

Plaintiff alleges that Defendant Rock failed to respond to his letters regarding Inmate Scarbrough before Inmate Scarbrough attacked him. (Dkt. No. 5 at 23-24.) He alleges that Defendant Rock failed to respond in retaliation for a lawsuit that Plaintiff previously filed against him. (Dkt. No. 5 at 24.) He alleges that Defendant Rock failed to respond to his post-attack requests for medical attention, the filing of criminal charges against Inmate Scarbrough, and the return of property that Inmate Scarbrough allegedly stole. (Dkt. No. 5 at 26-27.) Defendants move to dismiss all claims against Defendant Rock with prejudice. (Dkt. No. 32-1 at 1.)

### 1. Failure to Respond to Letters and Grievances

Plaintiff alleges that Defendant Rock violated his constitutional rights by failing to respond to his letters and grievances. (Dkt. No. 5 at 23-24, 26-27.) Defendants argue that these claims should be dismissed because the allegations do not plausibly suggest Defendant Rock's personal involvement. (Dkt. No. 32-1 at 3-4.) Defendants are correct. As discussed above, an allegation that a prison official failed to respond to letters and grievances is insufficient to plausibly suggest liability. " *Johnson*, 234 F. Supp. 2d at 363. Therefore, I recommend that the Court dismiss these claims without leave to amend.

### 2. Failure to File Criminal Charges

Plaintiff alleges that Defendant Rock violated his constitutional rights by failing to file criminal charges against Inmate Scarbrough. (Dkt. No. 5 at 26.) Defendants argue that this claim should be dismissed because there is no constitutional right to bring a criminal complaint against another individual. (Dkt. No. 32-1 at 3.) Defendants are correct. As discussed above, there is no such constitutional right. Therefore, I recommend that the Court dismiss this claim without leave to amend.

### 3. Retaliation

Plaintiff alleges that Defendant Rock failed to respond to his letters and grievances in retaliation for an earlier lawsuit that Plaintiff filed against him. (Dkt. No. 5 at 24.) Defendants argue that this claim should be dismissed. (Dkt. No. 32-1 at 5.) Defendants are correct.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's

exercise of First Amendment rights. *Id*. at 381-83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492).

Here, Plaintiff alleges that he engaged in protected conduct by filing a lawsuit against Defendant Rock regarding conditions at Great Meadow Correctional Facility. (Dkt. No. 5 at 24.) "Prisoners ... have a constitutional right of access to the courts and to petition the government for

the redress of grievances." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).  Therefore, the

operative complaint alleges facts plausibly suggesting that Plaintiff was engaged in protected

conduct.

The Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that

would deter a similarly situated individual of ordinary firmness from exercising ... constitutional

rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003),

*superceded by* 320 F.3d 346, 2003 U.S. App. LEXIS 2405, 2003 WL 360053 (2d Cir. Feb. 10,

2003)).  The Second Circuit has "made clear that this objective test applies even where a

particular plaintiff was not himself subjectively deterred; that is, where he continued to file

grievances and lawsuits." *Id*.  Here, Plaintiff alleges that Defendant Rock took adverse action by

failing to respond to his letters and grievances.  Merely ignoring letter and grievances seems

unlikely to deter a person from exercising his or her constitutional rights.  Therefore, I find that

Plaintiff has not alleged facts plausibly suggesting that Defendant Rock took adverse action

against him.

Even if one assumes that the failure to respond to letters or grievances constitutes adverse

action, the operative complaint does not allege facts plausibly suggesting a causal connection.

Several factors may be considered in determining whether a causal connection exists between the

plaintiff's protected activity and a prison official's actions.  *Baskerville v. Blot*, 224 F. Supp. 2d

723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873).  Those factors include: the temporal

proximity between the protected activity and the alleged retaliatory act and statements by the

defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73).[9] "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* Here, the operative complaint does not allege facts plausibly suggesting either factor. First, the operative complaint does not allege any facts plausibly suggesting temporal proximity. The case Plaintiff previously filed against Defendant Rock is *Smith v. Artus*, No. 9:07-CV-1150 (N.D.N.Y). That case was filed on October 29, 2007. *Id.* at Dkt. No. 1. The events here did not occur until three years later. Second, the operative complaint does not allege any statements that Defendant Rock made regarding his motivation. Therefore, I recommend that the Court dismiss the retaliation claim against Defendant Rock without leave to amend.

### 4. Failure to Protect

Plaintiff alleges that Defendant Rock failed to protect him from the attack by Inmate Scarbrough. (Dkt. No. 5 at 23-25.) Defendants argue that this claim should be dismissed. (Dkt. No. 32-1 at 4.) Although I find that this is a close case, I conclude that Defendants are correct.

To state a failure to protect claim, a plaintiff must allege facts plausibly suggesting that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is a conscious disregard of a substantial risk of serious harm. *Id.* at 835.

Cases in which inmates have made allegations similar to those here have survived

---

[9]     Courts consider two additional factors in instances where the alleged adverse action is the filing of a false misbehavior report, but those factors are not applicable here. *Baskerville*, 224 F. Supp. 2d at 732.

motions to dismiss.  *See Simmons v. Lantz*, No. 3:04–CV–2180, 2007 U.S. Dist. LEXIS 19050, at *9, 2007 WL 842008, at *3 (D. Conn. Mar.12, 2007) (holding that plaintiff's allegations that he informed a defendant captain that he felt threatened by his cell mate, but the defendant refused to move him to another cell, were sufficient to withstand a motion to dismiss); *Colman v. Vasquez*, 142 F. Supp.2d 226, 237 (D. Conn. 2001) (holding that because plaintiff prisoner advanced factual allegations that a prison official knew the inmate faced a substantial risk of serious harm, and failed to take reasonable measures to abate that harm, his complaint should survive a motion to dismiss); *Sims v. Bowen*, No. 96–cv–655, 1998 U.S. Dist. LEXIS 3856, at *11, 1998 WL 146409, *3 (N.D.N.Y. March 23, 1998) (Pooler, J.) (noting that "an inmate must inform a correctional officer of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference").

Here, however, Plaintiff has not alleged facts plausibly suggesting that Defendant Rock was deliberately indifferent.  Indeed, the complaint does not allege that Defendant Rock ever saw Plaintiff's letters and grievances, much less that he consciously disregarded them.  Therefore, I recommend that Plaintiff's failure-to-protect claim against Defendant Rock be dismissed with leave to amend.

### E.      Claims Against Defendant Evans

Plaintiff claims that Defendant Evans failed to respond to his complaints regarding Inmate Scarbrough or to his grievances after the attack.  (Dkt. No. 5 at 23-24, 26.)  Defendants move to dismiss the claims against Defendant Evans.  (Dkt. No. 32-1 at 1.)  For the reasons discussed above with regard to Defendant Rock, I recommend that the Court dismiss all claims against Defendant Evans without leave to amend with the exception of the failure-to-protect

claim, which should be dismissed with leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 32) be **GRANTED IN PART AND DENIED IN PART**.

**IT IS RECOMMENDED** that the following claims be dismissed without leave to amend: (1) all of Plaintiff's state law claims; (2) the claim that Defendant Martuscello denied Plaintiff's grievance regarding the alleged use of excessive force; (3) the claims that Defendants Martuscello, Rock, and Evans failed to file criminal charges on Plaintiff's behalf; (4) the claim that Defendant Martuscello failed to contact the Inspector General's office; (5) the claim that Defendants Martuscello, Rock, and Evans failed to respond to Plaintiff's letters and grievances; and (6) the retaliation claim against Defendant Rock; and it is further

**RECOMMENDED** that the following claims be dismissed with leave to amend: (1) the claim that Defendant Martuscello permitted abusive conditions to exist at Coxsackie; and (2) the claim that Defendants Rock and Evans failed to protect Plaintiff from the attack by Inmate Scarbrough; and it is further

**RECOMMENDED** that Defendants be directed to answer the following claims: (1) Plaintiff's First Amendment and RLUIPA claims against Defendant Wildermuth; (2) the excessive force claims against Defendants Wildermuth, Hale, Slater, Ensel, Morris, and Noethe; and (3) the failure-to-intervene claims against Defendants Saez, Chewers, and Bailey; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH) 2012 U.S. Dist. LEXIS 39232, 2012 WL 987726 (N.D.N.Y. Feb. 28,

2012); *Joy v. New York*, No. 5:09-CV-841 (FJS/ATB), 2010 U.S. Dist. LEXIS 104641, 2010 WL

3909694 (N.D.N.Y. Sept. 30, 2010);  *Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010

U.S. Dist. LEXIS 124737, 2010 WL 4905240 (N.D.N.Y. Sept. 29, 2010); *Crump v. Ekpe*, No.

9:07-CV-1331, 2010 U.S. Dist. LEXIS 10799, 2010 WL 502762 (N.D.N.Y. Feb. 8, 2010), *Price

v. Hasly*, No. 04-CV-0090S, 2004 U.S. Dist. LEXIS 29764, 2004 WL 1305744 (W.D.N.Y. June

8, 2004); *Simmons v. Lantz*, No. 3:04–CV–2180, 2007 U.S. Dist. LEXIS 19050, 2007 WL

842008 (D. Conn. Mar.12, 2007); and *Sims v. Bowen*, No. 96–cv–655, 1998 U.S. Dist. LEXIS

3856, 1998 WL 146409 (N.D.N.Y. Mar. 23, 1998) in accordance with the Second Circuit's

decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: January 24, 2013
     Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge